IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN EASLEY,<br>    Plaintiff | : | |
| | : | No. 1:23-cv-01096 |
| v. | : | |
| | : | (Judge Rambo) |
| LT. VOGT, et al.,<br>    Defendants | : | |

## MEMORANDUM

Plaintiff Warren Easley, currently incarcerated at State Correctional Institution – Rockview ("SCI-Rockview"), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against six correctional officers, alleging he has been denied access to the prison yard and law library in retaliation for filing grievances. (Doc. 1). Defendants have filed a motion to dismiss arguing that Easley has failed to state a claim for relief. (Doc. 18). For the following reasons, the Court will grant the motion in part. The Court also denies any request for preliminary injunctive relief and denies Easley's request that he be appointed counsel, without prejudice.

**I.**  **Statement of Facts**

In his complaint, Easley alleges as follows: On June 12, 2023, Easley took a COVID-19 test so he could have surgery. Easley was told that the test came back negative. (Doc. 1 ¶¶ 9-10). However, Defendant Richards[1] told Easley that

---

[1] In the complaint, Defendants are identified as Correctional Officer Richards, Lt. Vogt, Unit Manager Miller, Sgt. Carper, Nicky Paul, and Superintendent Salomon.

Defendants Miller, Vogt, and Carper had a meeting and "stated [Easley would] not be allowed to leave his cell at all due to quarantine[]." (*Id.* ¶ 12).

On June 13, Easley spoke to Defendant Miller regarding access to the prison yard. Easley has "mental health issues" and "utilizes the exercise to relieve stress and depression." Miller told Easley: "You are quarantined[,] you get nothing . . . Grievances is the reason you['re] not coming out now litigator sue me." On the same day, Carper told Easley: "Easley you get[] nothing. Shoulda thought about that before you start[ed] to file grievances on us." (*Id.* ¶¶ 13, 14, 22, 23).

On June 14, Vogt, overhearing Easley complain to other officers about his yard time, said "Easley always cr[ying,] always filing grievances. Which prevents him from moving along in program or going to yard." The next day, Easley "attempted to go to yard" but another officer told him "Sgt. Carper is still saying no." (*Id.* ¶¶ 15, 16).

On June 16, Easley was taken to surgery. On the same day, a counselor told Easley that Miller and Vogt had said Easley would be taken to the yard "when it can be scheduled." (*Id.* ¶¶ 17, 18).

On June 22, Easley filed three prison grievances (but does not describe the content of the grievances).[2] On June 23, Miller said to Easley: "How['s] no yard

---

[2] Easley filed this complaint less than a week after filing the June 22 grievances. However, Defendants do not argue that he failed to exhaust the available grievance process. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6

been working for you? You play[,] we play." On June 24-25, Richards said to Easley: "Miller and Vogt [told] Carper that you don't go to yard or law library until you go 2 weeks without filing a grievance." "You have to settle all this grievance bullsh*t out with Vogt. He said you still don't go to yard it's nothing personal." (*Id*. ¶¶ 20, 21, 26, 27).

As of the date of the complaint (signed June 26, 2023), Easley continued to be denied access to the yard and the law library. *See* (*id*. ¶ 19). Easley is a plaintiff in another lawsuit, *Easley v. Wetzel*, 1:21-cv-00251-SPB-RAL (W. D. Pa. 2021), for which he was sent discovery in May 2023. (*Id*. ¶ 8). Because he was not able to access the law library, he was not able to review the discovery. Defendants Nicky Paul (the Grievance Coordinator) and Salomon (the Superintendent) were "well aware" that Easley was unable to review discovery. (*Id*. ¶¶ 7, 8, 29, 30).

## II. Legal Standard

### A. Rule 12(b)(6) Motion to Dismiss

---

(2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Since the complaint itself does not conclusively demonstrate that Easley failed to exhaust available remedies, the Court does not consider the issue further. *See Millbrook v. United States*, 8 F. Supp. 3d 601, 611-12 (M.D. Pa. 2014) (although "[e]xhaustion must occur prior to filing suit, not while the suit is pending . . . [a]n inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint.").

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations in the complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (per curiam).  The Court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**B.      Section 1983**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

### III.   Discussion

Easley claims Defendants violated his constitutional rights by denying him access to the law library, denying him access to the prison yard for exercise, and retaliating against him for filing grievances.  Defendants move to dismiss all claims.  Although there is some doubt as to which claims Easley intended against which defendants, the Court considers each claim as if pled against all defendants.

### A.  Denial of Access to the Courts

Easley asserts a claim for denial of access to the courts based on his inability to review discovery. Prisoners have a constitutional right of access to the courts, including a law library or some appropriate substitute "to assist inmates in the preparation and filing of meaningful legal papers." *Bounds v. Smith*, 430 U.S. 817, 828-29 (1977). However, an inmate alleging a denial of access to the courts must show "actual injury," i.e., that the prison's failure "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Further, only attacks on a criminal sentence, or challenges to conditions of confinement, can support an access-to-courts injury. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. at 355 (emphasis in original).

Easley alleges he was unable to review discovery produced to him in *Easley v. Wetzel*, 1:21-cv-00251-SPB-RAL (W. D. Pa. 2021). The Court takes judicial notice of the docket and filings in that case[3], which indicate that Easley does raise claims related to prison conditions. However, the case was administratively closed on April 18, 2023, while the court searched for volunteer counsel to represent him,

---

[3] The Court "may take judicial notice of the contents of another [c]ourt's docket." *Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014).

and remained closed through April 18, 2024.  *See Easley v. Wetzel*, 1:21-cv-00251-SPB-RAL, Docs. 90 (order dated Apr. 18, 2023), 115 (Apr. 11, 2024).  Given these facts, Easley's allegations do not support an inference that his inability to access discovery in June 2023 will affect the outcome of the claims in that case.  *See Demeter v. Buskirk*, No. CIV.A. 03-790, 2003 WL 22416045, at *4-5 (E.D. Pa. Oct. 20, 2003) (lack of library access did not hinder plaintiff's prosecution of his civil cases).  Therefore, his access to courts claim will not proceed.

  B. **Denial of Exercise**

Easley claims Defendants violated his constitutional rights by refusing to let him exercise in the prison yard.  To establish that the denial of exercise violated his Eighth Amendment right to be free from cruel and unusual punishment, an inmate "must demonstrate that such a denial is sufficiently serious to deprive [him] of the minimal civilized measure of life's necessities."  *Gattis v. Phelps*, 344 Fed. App'x. 801, 805 (3d Cir. 2009).  The inmate must allege a sufficiently serious objective deprivation and that a prison official subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference.  *See Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996).  The temporary denial of exercise generally does not violate the Eighth Amendment unless it is an "extreme" deprivation.  *Fantone v. Herbik*, 528 F. App'x 123, 127 (3d Cir. 2013).

Easley alleges he has pre-existing mental health issues and "utilizes the exercise to relieve stress and depression." (Doc. 1 ¶¶ 22, 23). However, he does not allege that his health became substantially worse from the lack of exercise.[4] Although outdoor exercise undoubtedly benefits Easley, the deprivation he describes is not a kind that courts recognize as an Eighth Amendment violation. *See Islaam v. Kubicki*, No. 1:20-CV-00296, 2020 WL 1663344, at *5 (M.D. Pa. Apr. 3, 2020) (dismissing Eighth Amendment claim where plaintiff was unable to "exercise his knees as recommended by a therapist" but failed to allege adverse medical affects), aff'd, 838 F. App'x 657 (3d Cir. 2020); *Rodriguez v. Thomas*, 299 F. Supp. 3d 618, 639 (M.D. Pa. 2018) (dismissing where inmate was given "no recreation" for 91 days but "presented no evidence that he suffered any adverse medical effects"); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *3 (M.D. Pa. June 29, 2017) (dismissing despite inmate's allegation that lack of exercise was "stressing [him] out physically and mentally"). Even if the Court were to infer a sufficiently serious risk to Easley's health, he has not alleged facts to show that any defendant was aware of the specific risk to his health and

---

[4] Easley makes further factual allegations in his response brief, but those are not considered on a motion to dismiss. *See, e.g.*, *Melton v. SEPTA*, No. CV 23-1260, 2024 WL 1163537, at *5 (E.D. Pa. Mar. 18, 2024) ("A party may not make new factual allegations in response to a motion to dismiss."); *Richardson v. Wilkinsburg Police Dep't*, No. CV 16-0129, 2016 WL 4141084, at *3 (W.D. Pa. Aug. 4, 2016) ("The Court may not consider the new factual allegations [from the response brief] in deciding the motion to dismiss.").

deliberately indifferent to it. *See Islaam*, 2020 WL 1663344, at *5; *Illes v. DeParlos*, No. 1:09-CV-1166, 2012 WL 86938, at *2-3 (M.D. Pa. Jan. 11, 2012).

### C. Retaliation

Finally, Easley claims that Defendants retaliated against him for filing grievances. An inmate retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)). To state a prima facie case of First Amendment retaliation, a plaintiff must show that (1) he was engaged in constitutionally protected conduct, (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Id*. (citations and quotations omitted). Typically, the plaintiff must show "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," or "a pattern of antagonism coupled with timing to establish a causal link." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016). In some cases, causation can be established "from the evidence gleaned from the record as a whole." *Id*. Even if a prisoner demonstrates causation, the prison officials may still prevail by proving that they would have made the same decision absent the

9

protected conduct for reasons reasonably related to a legitimate penological interest.  *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

In this case, Easley alleges he was denied yard and law library access in retaliation for prior grievances.  Defendants argue that: (1) Easley has not alleged that certain defendants were personally involved in the alleged retaliation; (2) Easley has not adequately alleged that his grievances were the reason he was denied access to the yard and law library; and (3) the denial of the yard and the law library were not adverse actions.

Only three of the defendants are alleged to be personally involved in retaliation.  Easley alleges that Defendants Miller, Vogt, and Carper had a meeting and decided Easley would not be allowed to leave his cell due to "quarantine." This supports a plausible inference that Miller, Vogt, and Carper were personally involved in the decision to restrict Easley to his cell.  Although Defendant Richards allegedly taunted Easley, and informed Easley of decisions by Miller, Vogt, and Carper, the complaint does not support a plausible inference that Richards was involved in the decision himself, so Richards is not an appropriate defendant for this claim.  As for Defendants Paul and Salomon, Easley alleges only that they were "well aware" he could not review discovery because he could not access the law library.  Easley does not explain how they know, but the Court infers that Paul, the grievance coordinator, and Salomon, the superintendent,

10

obtained this knowledge by reviewing Easley's grievances.  Merely reviewing a plaintiff's grievances does not establish "personal involvement" in the alleged wrongdoing. *See Dooley*, 957 F.3d at 374.  Therefore, any retaliation claim could only proceed against Miller, Vogt, and Carper.

Defendants argue that Easley has not alleged facts supporting an inference that Easley was "quarantined" because of his grievances.  But Easley imputes statements to each of Miller, Vogt, and Carper, directly suggesting that grievances were a primary reason for Easley's quarantine.  Assuming for purposes of the motion to dismiss that these allegations are true, Easley has plausibly alleged that his grievances were a "substantial or motivating factor" in those defendants' decision to quarantine him. *Wisniewski*, 857 F.3d at 156.

Defendants also argue that denial of access to an exercise yard is not a severe enough deprivation to be an adverse action.  This argument is premised on the assumption that Easley "alleges he was denied yard for one week" (Doc. 19 at 6), and on case law indicating that denial of access to a prison yard for a short period of time is not an adverse action. *See Sears v. Mooney*, 2019 WL 6726839, at *8 (M.D. Pa. 2019) (listing cases).  But Easley alleged that his lack of access was ongoing as of the time of the complaint[5], and further alleged he would not be

---

[5] In briefing, Easley contends he was denied access for 38 days, between June 12, 2023, and July 20, 2023.  As noted above, the Court does not consider that allegation for purposes of the motion to dismiss.  *See* n. 4, *supra*.

11

permitted to use the yard until he could go two weeks without filing a grievance. (Doc. 1, ¶¶ 19, 20).  Unlike Easley's Eighth Amendment claim, which required him to show adverse health effects, here Easley must allege that the denial of exercise was harsh enough "to deter a person of ordinary firmness from exercising his constitutional rights."  *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  Construing all facts and reasonable inferences in Easley's favor, the Court cannot assume that Easley's access was restricted for just one week, or that it was so brief that it would not deter an ordinary person from filing grievances.  Accordingly, Easley's retaliation claim may proceed against Miller, Vogt, and Carper.

## IV.     Damages

Defendants specifically request that the Court dismiss Easley's claims for compensatory and punitive damages, because Easley has not pled the required physical injury for compensatory damages under the Prisoner Litigation Reform Act (42 U.S.C. § 1997e(e); *see Allah v. Al-Hafeez*, 226 F.2d 247, 250-51 (3d Cir. 2009)), or the "reckless or callous disregard of, or indifference to, the rights and safety of others" required for punitive damages (*Small v. Wetzel*, 528 F. App'x 202, 210 (3d Cir. 2013) (citation omitted)).

To pursue compensatory damages, Plaintiff must allege a physical injury that is "more than *de minimis*."  *Mitchell v. Horn*, 318 F.3d 523, 533-36 (3d Cir. 2003).  Plaintiff alleges that he is "injured mentally [and] physically" from the

12

alleged deprivations (Doc. 1 ¶ 25), but the complaint provides no further detail. Read as a whole, the complaint does not support an inference that Plaintiff has suffered more than *de minimis* physical injury from the inability to exercise. However, the retaliatory behavior Easley alleges, taken as true for purposes of the motion, could support an inference that the defendants were indifferent, at minimum, to his constitutional rights.  The Court will strike Easley's request for compensatory damages and the case will proceed based on the remaining damage claims.  *See, e.g.*, *Castillo v. O'Haine*, No. 1:22-CV-00417, 2024 WL 3461050 (M.D. Pa. July 18, 2024).

V.     **Preliminary Injunctive Relief and Request for Counsel**

Easley also filed a declaration and memorandum in support of preliminary injunctive relief (Docs. 2, 3); however, there is no motion for such relief pending before the Court.  Based on Easley's statement in subsequent briefing that his yard and law library access was restored on July 20, 2023 (Doc. 20 at 2), the Court clarifies that to the extent such a request was intended, it is denied as moot, without prejudice to any future motion.

Finally, Easley requests within his complaint that he be appointed counsel. (Doc. 1 at 7).  Although indigent civil litigants have no right to the appointment of counsel, district courts have discretionary power to request appointed counsel for such litigants pursuant to 28 U.S.C. § 1915(e)(1).  *See Montgomery v. Pinchak*,

294 F.3d 492, 498 (3d Cir. 2002) (citations omitted).  The Third Circuit has "outlined a two-step process" that district courts are to follow when deciding whether to request appointed counsel to represent an indigent civil litigant.  *See Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019).

First, as a threshold inquiry, the district court must consider whether the plaintiff's case has "some arguable merit in fact and law."  *See Montgomery*, 294 F.3d at 498-99 (citations omitted).  Second, if the district court determines that the plaintiff's case has such merit in fact and law, then the district court is to consider other factors, including: (1) the plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require testimony from expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf.  *See Houser*, 927 F.3d at 697 (citations omitted).  This list "is not meant to be exhaustive," and the court must determine on a "case-by-case basis" whether a request for appointed counsel is warranted.  *Tabron v. Grace*, 6 F.3d 147, 157-58 (3d Cir. 1993).

The Court finds that appointed counsel is not warranted at this time.  Easley is an experienced *pro se* litigator.  *See*, *e.g.*, *Easley v. Hollibaugh, et al.*, 1:19-cv-02026-SHR-SH (2019); *Easley v. Wetzel, et al.*, 1:21-cv-00251-SPB-RAL (W. D.

14

Pa. 2021); *Easley v. Bloom, et al.,* 3:22-cv-00135-SPB-RAL (W. D. Pa. 2022). The claims in this case are not particularly complex and the relevant events occurred over a relatively short time. Although credibility determinations may be involved if the case were to proceed to trial, there is no indication that expert testimony would be needed. To the extent Easley's ability to litigate this case is undermined by intermittent access to the law library, he may request an extension of time for the relevant deadline(s). The Court notes that in a prior case in this district, Easley was appointed counsel after he litigated his own claims through summary judgment. *Easley v. Tritt, et al.*, 1:17-cv-00930-JPW-SH (Doc. 414) (May 20, 2021). If future proceedings in this case show a need for appointed counsel, the Court will reconsider the issue.

## VI.   Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss in part, and denies any request for preliminary injunctive relief or for appointment of counsel, without prejudice. Easley may proceed on claims of retaliation in violation of the First Amendment against Defendants Miller, Vogt, and Carper. An appropriate order follows.

/s/ Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: August 12, 2024